*54*

United States District Court
Southern District of Texas
ENTERED

MAR 3 1 2000

Michael N. Milby, Clerk of Court
By Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| MICHAEL A. ALEX, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. B-98-049 |
| | § |
| BROWNSVILLE INDEPENDENT | § |
| SCHOOL DISTRICT, | § |
| Defendant. | § |

## ORDER

BE IT REMEMBERED that on March 29, 2000, the Court considered all pending motions in the case of *Alex v. BISD*, Civil Action No. B-98-049. Now pending before the Court are Defendant's amended motion for summary judgment (Dkt. No. 32); Defendant's motion to strike "Plaintiff's supplemental response to Defendant's supplemental motion for summary judgment" (Dkt. No. 49); Defendant's motion to strike "Plaintiff's supplemental filing in response to Defendant's evidentiary summary" (Dkt. No. 52); and Plaintiff's request "that he be allowed to re-plead his case specifically under 42 U.S.C. §2000e-3" (Dkt. No. 53).

## I.    Background facts.

Mr. Michael A. Alex ("Plaintiff") was a school teacher and athletic coach with the Brownsville Independent School District ("BISD") from 1987 to 1995. In December of 1994, Plaintiff brought a copy of *Anne Hooper's Pocket Sex Guide*. "The book is a sex manual which, through graphic photographs, pictures and text, attempts to improve one's sexual pleasure by demonstrating a wide variety of sexual techniques." (Decision of the Commissioner). Plaintiff engaged in conversation about the book and sexual topics with a group of students including several girls and one boy. Plaintiff discussed issues such as "blue balls" and teenage pregnancy; told the students that the book contained information on issues their parents would not discuss with them; and told them where to purchase the book. BISD investigated the matter and suspended

1

Plaintiff.  Eventually the Texas Education Agency revoked Plaintiff's license to teach in the State of Texas.

In February of 1995, Plaintiff filed a charge of discrimination with the Texas Commission on Human Rights ("TCHR") and the Equal Employment Opportunity Commission ("EEOC").  In his discrimination charge, Plaintiff complained that he was a victim of racial discrimination.  He complained that he had been disciplined excessively, excluded from meetings, subjected to derogatory racial remarks, and been suspended from his duties.  In his discrimination statement, Plaintiff cited specific instances of conduct he believed qualified as discriminatory conduct.  First, he alleged that he had been reprimanded for wearing shorts in the main building; whereas, white coaches were permitted to wear shorts despite the general prohibition against anyone wearing shorts in the main building.  Next, Plaintiff alleged that he was informed of decisions made regarding banners in the gymnasium.  This decision was made at a meeting including all coaches except Plaintiff.  Plaintiff alleged that he was excluded from the meeting because of his race.  Moreover, Plaintiff alleged that he had spoken with the Ms. Fernandez, the principal, about racial slurs and derogatory remarks directed toward him.  Plaintiff alleged that Ms. Fernandez neither looked into the matter nor attempted to be more sensitive as she had promised.  Finally, Plaintiff complained that he had been suspended.  He alleged that his termination was part of a systematic plan initiated by Ms. Fernandez to terminate Plaintiff.

## II.    Summary judgment standard.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The nonmoving party bears the burden of setting forth specific facts showing that there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Existence of a factual dispute will not defeat a motion for summary judgment unless the disputed facts might affect the outcome of the lawsuit under the governing law.  *See id.* at 247-48.

The moving party bears the initial burden of informing the Court of the issues and

the evidence that supports summary judgment. *See Celotex*, 477 U.S. at 323. Then the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact and all justifiable inferences are drawn in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87 (quoting Fed. R. Civ. P. 56 (c)).

## III.    Three hundred day filing period.

As an initial matter, Defendant raises the defense that Plaintiff is barred from asserting any claim of race discrimination and harassment that occurred more than 300 days prior to Plaintiff filing his charge of discrimination with the TCHR and the EEOC. Conversely, Plaintiff argues that he is only limited to claims that "can reasonably be expected to grow out of the charge of discrimination;" therefore, Plaintiff concludes, it is reasonable for him "to complain about incidents that exhibit a pattern, practice or custom of discrimination by the Defendant" over the course of Plaintiff's employment. Neither Defendant nor Plaintiff cogently argues this point or cites compelling authority.

To sustain a Title VII claim in Texas, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the "alleged unlawful employment practice." *See* 42 U.S.C. S 2000e-5(e); *Anson v. University of Tex. Health Science Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992); *Washington v. Patlis*, 868 F.2d 172, 175 (5th Cir. 1989). The limitations period begins on the date the discriminatory act occurred, and a complainant cannot sustain claims based on incidents occurring before the 300-day period. *See Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). However, acts occurring more than 300 hundred days before complainant filed a charge "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see also Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n.12 (5th Cir. 1995); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 604 n.5 (5th Cir. 1986); *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981). Filing a

3

complaint with the EEOC is a precondition to maintaining an action under Title VII; it is not a jurisdictional requirement. Thus, the time period for filing may be equitably tolled or otherwise modified. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Plaintiff has the burden of demonstrating a factual basis to toll the limitations period. *See Blumberg v. H.C.A. Management Co., Inc.*, 848 F.2d 642, 644-45 (5th Cir. 1988). Because he fails to establish such a factual basis, Plaintiff is limited to claims based on discrimination occurring within the 300 days prior to the date he filed his charge. Plaintiff's charge is stamped "Received" on February 23, 1995. Thus, Plaintiff may only raise claims concerning events that occurred in the 300 days prior to February 23, 1995. Defendant calculates the relevant time period to be April 29, 1994, to February 23, 1995. The Court, however, has calculated the 300th day to fall on April 27, 1994.[1]

## IV.   Procedural posture.

With its answer, Defendant filed a motion to dismiss and motion for summary judgment. In October of 1998, Plaintiff filed an amended complaint. A month later, Plaintiff filed a second amended answer. In December of that year, Defendant filed an amended motion for summary judgment to address new issues raised in Plaintiff's second amended complaint. The parties and the Court agreed to permit Plaintiff additional time to file a response, and on January 14, 1999, Plaintiff filed his response to the motion for summary judgment, a motion for leave to file a third amended complaint, and a copy of his third amended complaint.

The Court granted Plaintiff's motion for leave to file his third amended complaint which resulted only in the negligence and contract claims being excised from Plaintiff's claims. The only remaining claims are "violations of the Civil Rights Act of 1866, 42 U.S.C. Section 2000e and in violation of the Civil Rights Act of 1964 and under the Texas Civil Rights Act." (Third Amended Complaint, ¶19). Because the third amended complaint does nothing more than "drop" two claims and because Defendant has re-

---

[1]   Neither party has drawn the Court's attention to any particular event falling on either April 27 or 28 of 1994; therefore, the difference is not significant.

4

asserted its amended motion for summary judgment, the Court is now prepared to consider and rule on Defendant's motion.

## V.   Evidence to be considered on summary judgment.

The Court has already addressed the inadmissibility of certain exhibits Plaintiff has admitted as summary judgment evidence.  Once again, the Court is required to determine the admissibility and relevance of affidavits submitted by Plaintiff in support of his Title VII claims.  Originally, Plaintiff attached two exhibits to his response to Defendants motion for summary judgment.  The first was Plaintiff's affidavit, and the second was Plaintiff's charge of discrimination filed with the TCHR and the EEOC. Defendant objected to much of Plaintiff's proffered summary judgment evidence on the grounds that it was inadmissible hearsay, unsubstantiated, unspecific, a bare allegation, conclusory, or a legal conclusion.  (Dkt. No. 39).  The Court granted Defendant's motion to strike.  Thus, the Court considers only those portions of Plaintiff's affidavit not stricken.  Moreover, Plaintiff's charge of discrimination is not considered for the truth of the matter asserted; however, the Court may consider the charge of discrimination for other limited purposes.

At the July 16, 1999, hearing, the Court granted Defendant's oral motion for leave to file an amended motion for summary judgment.  Furthermore, the Court instructed Defendant to produce an amended brief conforming to the Court's standing rules requiring summary judgment evidence be marshaled and cited by exhibit, page, and line number.  Shortly thereafter, Defendant filed an amended brief entitled "Defendant's evidentiary summary in support of Defendant's amended motion for summary judgment."  Defendant compiled a tome of summary judgment evidence, referenced each piece of evidence accordingly, and explained its relevance to the legal arguments made in the amended motion for summary judgment.

Approximately one week later, Plaintiff filed a "supplemental response to Defendant's supplemental motion for summary judgment."[2]  (Dkt. No. 48).  In his

---

[2]     Defendant never filed a document entitled "supplemental motion for summary judgment."  Plaintiff apparently was responding to Defendant's evidentiary summary which did not purport to add any new legal argument or evidentiary basis for

5

supplement, Plaintiff reasserts his allegations of a hostile work environment claim. Plaintiff attached exhibits "A" through "P" to his response. These exhibits range from "letters of support" to affidavits containing character testimony and accounts of events surrounding the incident involving the Plaintiff showing a so-called sex manual to a group of his students. Within days, Defendant filed a motion to strike the entire pleading. (Dkt. No. 49). In the alternative, Defendant requested leave to file individualized and detailed objections to the exhibits attached to Plaintiff's supplement.

Defendant's motion to strike the entire pleading is DENIED. Defendant is correct in its assertion that the supplemental response is filed more than 20 days after the amended motion for summary judgment was filed, and Defendant is correct in its assertion that Plaintiff did not request leave to file his supplemental response. However, the civil courtroom minutes, (Dkt. No. 45), clearly indicate that the Court granted BISD's "oral motion for leave to file [an] amended motion for summary judgment." Plaintiff could reasonably assume that that ruling included an additional 20 days to respond to the "amended motion for summary judgment" Defendant would file. Thus, the Court accepts Plaintiff's supplemental response as timely and properly filed.

Moreover, Defendant's request for leave to file detailed objections is DENIED. The Court agrees with Defendant's characterization of the exhibits as "unsworn;" "undated and/or unsworn;" and "full of irrelevant, immaterial and inadmissible assertions and/or hearsay." For this reasons, the Court culls from those exhibits only admissible and competent summary judgment evidence.[3] The Court will not provide a line by line analysis of what evidence is admissible or relevant. However, as a general matter, the Court will consider all assertions of specific facts based on personal knowledge that are admissible under the Federal Rules of Evidence and presented in a sworn and dated

---

summary judgment.

[3]    As evidenced by the Court's July 16, 1999, rulings, it is the Court's usual practice to require the parties to produce detailed evidence or detailed objections to evidence. However, in the interest of justice, judicial economy, and efficiency, the Court will make a rare exception and sift through these exhibits to determine what is and is not competent summary judgment evidence.

6

affidavit.

## VI.   Title VII claims.

Although Plaintiff's claims are difficult to discern from his complaint and pleadings, his claims fall into two separate categories: 1) disparate treatment claims and 2) hostile work environment claims.  Under the first category, disparate treatment, Plaintiff's complaint presses the blanket assertion that he was discriminated against "with respect to compensation, terms, conditions and privileges of employment."

Plaintiff's disparate impact claim revolves around his termination and the treatment he received from his supervisors.  Because none of the actions of which Plaintiff complains adversely affected his employment, the only disparate treatment contention with any merit relates to Plaintiff's termination.  The gravamen of Plaintiff's complaint, response to summary judgment, and his supplemental response is that his claims are for hostile work environment based on racial discrimination.  Plaintiff has not demonstrated that Defendant's actions were pervasive or severe enough to change a term, condition, or privilege of employment.  Both claims ultimately fail for the similar reasons.

Just as Plaintiff's claims are difficult to discern, Plaintiff's analysis of the applicable law is muddled.  Plaintiff confuses and conjoins the disparate impact analytical framework and the hostile work environment analysis.  The Court will analyze both claims under the relevant case law.

### A.   Disparate treatment claims.

Disparate treatment claims, under Title VII, are governed by the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-4 (1973).  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *Walton v. Bisco Ind., Inc.*, 119 F.3d 368, 370 (5th Cir. 1997). Under this burden shifting framework, Plaintiff must prove "by a preponderance of the evidence a prima facie case of discrimination."  Burdine, 450 U.S. at 252-3; *see also Walton*, 119 F.3d at 370.  However, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous."  *Burdine*, 450 U.S. at 253. Moreover, there is no fixed formula to establish a prima facie case for every

7

employment situation.  *See McDonnell Douglas*, 411 U.S. at 802 n.13; *Burdine*, 450 U.S. at 253-4 n.6.

Thus, the elements for making out a primae facie case are flexible and must be tailored to the particular claims asserted by Plaintiff.  The prima facie case, as announced in *McDonald Douglas*, requires a showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after rejection, the position remained open and the employer continued to seek applicants of complainant's qualifications."[4]  411 U.S. at 802.  The third element has universally been interpreted to require a showing of an adverse employment action. The fourth requires a showing of a preference for a  person not belonging to the protected class.  A modified version of the *McDonald Douglas* test applies to this case:

(1) that [Plaintiff] was a member of a protected group, African-American;

(2) that [Plaintiff] was qualified for [his] position;

(3) that [Plaintiff] was dismissed or suffered an adverse employment action;  and

(4) that the defendants sought to replace [Plaintiff] with a similarly qualified white employee.

*See Caro v. City of Dallas*, 17 F. Supp.2d 618, 624-25 (N.D. Tex. 1998); *see also Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

After the plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  *See Burdine*, 450 U.S. at 253; *see also Walton*, 119 F.3d at 370.  Essentially, Plaintiff's primae facie case, if sufficient, raises a presumption of discrimination.  Defendant then, through the introduction of admissible evidence, must set out the reasons for its actions.  If the explanation provided is legally sufficient to justify a judgment for the defendant, the presumption raised by the prima facie case is

---

[4]        Some courts use a variation of this test in which the fourth element is that a person not belonging to a protected class is given the job.

8

rebutted. *Burdine*, 450 U.S. at 255. However, the ultimate burden of proving discrimination remains with the plaintiff at all times. *Id.* at 253.

In the third and final stage of the analysis, the plaintiff has the burden of proving that the legitimate reasons offered by the defendant are pretextual. *See id.* at 256; *McDonnell Douglas*, 411 U.S. at 804; *Walton*, 119 F.3d at 370; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996). The Fifth Circuit, relying upon *St. Mary's*, 509 U.S. at 515, has placed additional restrictions on the proof of pretext. *See Walton*, 119 F.3d at 370. Thus, Plaintiff must not only create "a fact issue regarding whether each of the employer's stated reasons was what actually motivated" the employer, but also "a reasonable inference that race . . . was a determinative factor in the actions of which plaintiff complains." *Id.* Plaintiff need not prove both discrimination and a pretext. *See id.* at 370-71. Rather, once the plaintiff disproves the legitimate reasons proffered by the defendant, the trier of fact is not compelled to find for the plaintiff; however, the trier of fact is permitted "to infer the ultimate fact of intentional discrimination." *Id.* This merely reinforces the fact that the burden of proof remains on the plaintiff as to discrimination throughout the *McDonald Douglas* burden shifting framework. *See Burdine*, 450 U.S. at 253.

      a.    **Plaintiff's prima facie case**.

Plaintiff, as an African-American, is a member of a protected class. Therefore, he satisfies the first element of his prima facie case as to all of his Title VII claims. *See McDonnell Douglas*, 411 U.S. at 802. Whether Plaintiff was qualified to teach and coach is not contested by the parties; therefore, it is assumed Plaintiff satisfies this element.

The third element of the prima facie test requires Plaintiff to prove that he suffered an adverse employment action. Adverse employment actions include failing to hire, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining "tangible employment action" and noting that it often "inflicts direct economic harm"). Plaintiff does not allege or submit summary judgment evidence showing that his employment status was significantly changed. In his

9

response and supplemental response, Plaintiff never explicitly refers to his termination as an adverse employment action for purposes of proving his prima facie case. Rather, Plaintiff focuses on his belief that he was subjected to a hostile work environment. He lists occasions on which he feels he was singled-out or treated differently and occasions when he heard racial slurs. None of the competent summary judgment evidence raises an issue of fact regarding whether Plaintiff suffered an adverse employment action. Plaintiff does not satisfy the third element of the *McDonald Douglas* test. This should end the inquiry. However, because Plaintiff was eventually terminated from his employment with BISD, the Court will entertain the proposition that Plaintiff suffered an adverse employment action when he was terminated.

Plaintiff cannot make a prima facie showing. Although Plaintiff's evidence supports the first two elements and might support the third, Plaintiff provides no evidence to prove the fourth. Plaintiff has not produced competent summary judgment evidence, or any evidence, to show that Defendant's sought or replaced Plaintiff with a similarly qualified white employee. No reasonable jury could conclude that Defendant's sought to replace Caro with a similarly qualified white employee. Thus, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's disparate treatment claim.[5]

## B. Hostile work environment based on racial discrimination.

Plaintiff's hostile work environment claim is without merit. The Fifth Circuit was the first Court to recognize a cause of action based on discriminatory work environment. *See Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1972). A prima facie case for a claim of hostile work environment includes the following:

(1) That [Plaintiff] belongs to a protected class;

---

[5]     Assuming Plaintiff made out a prima facie case, his claim would nonetheless fail. Defendant has offered a legitimate reason for terminating Plaintiff, *i.e.*, that Plaintiff brought and distributed a sex manual to students and engaged in inappropriate conversations with students. Plaintiff has not presented sufficient summary judgment to show that Defendant's legitimate reason is a pretext and that impermissible racial animus motivated his termination.

10

(2) That [Plaintiff] was subjected to unwelcome harassment;

(3) That the harassment was based on [Plaintiff's] race;

(4) That the harassment affected a term, condition, or privilege of
employment; and

(5) Respondeat superior.

*Padilla v. Carrier Air Conditioning*, 67 F. Supp.2d 650, 659 (E.D. Tex. 1999).  Not
all workplace harassment affects a term, condition, or privilege of employment.
*See Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67 (1986).  Plaintiff must prove
that the harassment was so severe and pervasive that it altered the conditions of
employment and, thus, constituted an abusive working environment.  *Id.* at 67.
Plaintiff must prove more than isolated events.  Rather, Plaintiff must prove a
steady onslaught of racial comments.  The Court further acknowledges that
offensive comments, such as a racial epithet, do not significantly affect the
conditions of employment so as to give rise to a Title VII claim. *See Rogers*, 454
F.2d at 238.

First, to be actionable, the alleged harassment must be because the
plaintiff is a member of a protected class.  *See Harris v. Forklift Sys., Inc.*, 510
U.S. 17, 21-23 (1993); *Meritor*, 477 U.S. at 66-67.  Plaintiff is an African-
American and, thus, is a member of a protected class.

However, Plaintiff does not convince the Court that the alleged
harassment affected the terms, conditions, and privileges of his employment.
*See id.*  Plaintiff may have been subjected to unwelcome harassment.  "Of
course, . . . not all workplace conduct that may be described as 'harassment'
affects a 'term, condition, or privilege' of employment within the meaning of Title
VII." *Meritor*, 477 U.S. at 67.  Racial slurs, though offensive, do not affect the
conditions of employment.  *See Rogers*, 454 F.2d at 238.  Furthermore, Plaintiff
provides the Court with no evidence of any action by Defendants that created a
hostile work environment that is actionable under Title VII.  Arguably, some of
the alleged conduct is harassment in the traditional sense, but there is no
competent summary judgment evidence that it was severe enough to change a

11

term, condition, or privilege of Plaintiff's employment. *See id.* Thus, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's hostile work environment claim.

## VII.   Plaintiff's request to re-plead his complaint.

Plaintiff never raised a retaliation claim in his discrimination charge or in his original, second, or third complaint. Instead, Plaintiff first raised the issue of a potential retaliation claim in his "supplemental response." Plaintiff never filed a formal motion for leave to file an amended complaint. In a pleading primarily addressing evidentiary concerns, Plaintiff included a one sentence request for leave to re-plead a retaliation claim.

The Court would not have subject matter jurisdiction over Plaintiff's retaliation claim because he has failed to exhaust his administrative remedies with regard to this claim. A condition precedent to bringing suit on any Title VII claim is the timely filing of an EEOC charge. *See Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). The scope of a Title VII suit filed thereafter extends no further than the scope of the investigation that can reasonably be expected to grow out of the charge of discrimination. *See id.; See also Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Chester v. American Tel. and Tel. Co.*, 907 F. Supp. 982, 987 (N.D. Tex. 1994), *aff'd* 68 F.3d 470 (5th Cir.1995), *cert. denied*, 516 U.S. 1141 (1996). On his charge of discrimination filed February 23, 1995, Plaintiff checked only the "Race" box and did not check "Retaliation." Plaintiff's charge drew the EEOC's attention to the issue of race discrimination only. It cannot reasonably be expected that issues of retaliation discrimination would be within the scope of the EEOC's investigation; therefore, those allegations are not properly within the scope of this Title VII suit. *Young*, 906 F.2d at 179-80. Plaintiff failed to exhaust his administrative remedies as to his retaliation claim by filing a timely charge with the EEOC; therefore, the Court would lack subject matter jurisdiction over his retaliation claim. This claim, if pled, would necessarily be dismissed without prejudice. Therefore, in the interest of judicial economy and efficiency of resources, Plaintiff's request to re-

12

plead a retaliation claim is DENIED.

## VIII.    Conclusion.

For the reasons mentioned above, the Court makes the following rulings.

1.    Defendant's amended motion for summary judgment (Dkt. No. 32) is GRANTED;

2.    Defendant's motion to strike "Plaintiff's supplemental response to Defendant's supplemental motion for summary judgment" (Dkt. No. 49) is DENIED;

3.    Defendant's motion to strike "Plaintiff's supplemental filing in response to Defendant's evidentiary summary" (Dkt. No. 52) is DENIED; and

4.    Plaintiff's request "that he be allowed to re-plead his case specifically under 42 U.S.C. §2000e-3" (Dkt. No. 53) is DENIED.

DONE at Brownsville, Texas, this ___31___ day of March 2005.

Hilda G. Tagle
United States District Judge

13